ALLIE PLUMLEY *v.* SUPERIOR FIRE INSURANCE COMPANY

(No. 9055)

Submitted April 30, 1940. Decided May 28, 1940.

*Ashworth & Sanders,* for plaintiff in error.

*Steptoe & Johnston, Stanley C. Morris, W. E. Miller* and *File, Scherer & File,* for defendant in error.

KENNA, JUDGE:

Allie Plumley brought this action in assumpsit in the Circuit Court of Raleigh County against the defendant, Superior Fire Insurance Company, seeking to recover the face of a fire insurance policy covering her dwelling at Crab Orchard, Raleigh County, which was completely destroyed by fire May 28, 1938. On June 2, 1939, a verdict for one thousand dollars with interest from the twenty-eighth day of August, 1938, sixty days after filing proof of loss, was returned in favor of the plaintiff. Upon the defendant's motion, an order was entered September 1, 1939, setting the verdict aside and awarding a new trial. This writ was granted upon application of the plaintiff below.

By appropriate pleadings the following questions were raised and submitted to court and jury upon the trial of the action:

(1) Whether or not the fire which destroyed the plaintiff's dwelling was of incendiary origin at the instigation

of the plaintiff. There being nothing more than circumstantial evidence, it is conceded that the jury's verdict settled this question.

(2) Had not the terms of the policy been violated because it contained a clause that limited the "total insurance permitted" to two thousand dollars, whereas, in addition to the policy for one thousand dollars which was sued upon, plaintiff at the time of the fire had in effect another policy for one thousand dollars issued by the same agent, E. H. Keaton, and two other policies issued in 1935 through Wilkes Insurance Agency in the amount of twelve hundred dollars each, plus three hundred dollars each upon the personal property located within the insured building.

(3) Whether an additional clause added to the main policy and prorating the total loss or damage in the ratio that the amount of the policy bears to the total amount of insurance in effect did not clearly contemplate additional insurance which could validly exceed the total amount permitted.

(4) Whether the inherent explosion clause, the terms of which also embrace the existence of other insurance, does not contemplate a total amount exceeding the limitation fixed in the policy in which that clause appears.

(5) Whether a prorating clause having to do with the three-fourths value and carrying the same phraseology does not lead to the same result.

(6) Whether as to real estate losses, our statute, Code, 33-4-9, making a fire insurance company liable for the full face value of its policy in the event of total loss without prorating its liability does not make the two prorating provisions nugatory under the facts of this case.

The plaintiff below, by way of replication to defendant's specifications, advanced the alternative hypotheses that the paragraphs added to the standard policy, by implication, permitted insurance beyond the limited amount named in the policy, and, at the same time, that because the general agent of the Superior Fire Insurance Company, prior to the issuance of the policy sued on, was in-

formed of the existence of twenty-four hundred dollars aggregate amount of the two outstanding policies of insurance issued in 1935, that company had waived the question of the additional insurance being a violation and cancellation of the plaintiff's contract.

The case went to the jury on the theory that the supplemental clauses constituted an implied permission to exceed the limit of insurance named in the body of the policy, confining the jury's inquiry to the single question of incendiarism, the testimony bearing upon the information in the possession of the agent of the defendant company at the time the policies were delivered to the assured having been withheld from the jury. The verdict was set aside due to the trial judge's having reached the ultimate conclusion that the supplemental clause did not operate to delete the provision limiting the aggregate insurance covering plaintiff's dwelling.

That a violation of the limited insurance clause of a fire insurance policy constitutes a breach sufficient to defeat recovery is agreed. Plaintiff contends, however, that the supplementary conditions which were added to and became part of the principal contract are controlling, and, due to the fact that they plainly contemplate insurance in addition to the amount permitted by the policy sued upon, they virtually render nugatory the limited insurance clause of the principal contract. The defendant counters by calling attention to the fact that there is a clause in the body of the policy itself known as the "lightning and electrical apparatus clause" which also treats of other insurance and, when read with the limitation clause in the same contract, plainly contemplates limiting the total amount of insurance by that clause, which, in the printed form, has a blank to be filled in naming the total amount of permitted insurance and that if the body of the contract contemplates additional insurance subject to the limitation provision, the addition of supplementary provisions couched in similar language, correctly construed and read to conform with the body of the policy, can have no other effect, and for that reason

cannot justify exceeding the amount of permitted insurance.

We are of the opinion that the defendant's position is well taken, and that dealing with other insurance in effect in the light of the fact that the limited insurance clause is not supposed to fix the limit in each instance at the amount of the policy-contract in which it appears, but is plainly for the purpose of providing beyond peradventure that the property be not excessively insured *in toto,* we are unable to see anything inconsistent or irreconcilable as a consequence of the two provisions. If provisions of that sort are enforceable and not inconsistent in so far as the body of the contract is concerned, it follows that similar wording contained in supplemented provisions does not do away with the fixed limitation. For this reason we think that the *nisi prius* judge was clearly right in setting aside the verdict, there having been no evidence before the jury of a waiver by the insurance company of the limited permission clause.

We are further of the opinion that the trial court should have submitted to the jury the proffered testimony having to do with the possible waiver of the insurance company of the benefit of the limited insurance clause in its policy. If, upon an admitted state of facts, Keaton was the general agent of the defendant company empowered to issue policies in its name, and was informed by the plaintiff of the existence of all the policies in effect covering her dwelling when the application was made, and following that, delivered the policy sued on to her with the amount of the limited insurance set at a figure which would otherwise constitute an *ab initio* vital breach on the part of the assured, the defendant's conduct through its authorized agent would constitute a waiver of the limitation provision as a defense. *Kimball Ice Co.* v. *Springfield, etc., Co.,* 100 W. Va. 728, 132 S. E. 714; *Medley* v. *German, etc., Co.,* 55 W. Va. 342, 47 S. E. 101, 2 Ann. Cas. 99. See also, *Melton* v. *Aetna Ins. Co.,* 110 W. Va. 73, 157 S. E. 33; *Hamlet* v. *American, etc., Co.,* 107 W. Va. 687, 150 S. E. 7; *Oliker* v. *Williamsburg Ins. Co.,* 72 W. Va. 436,

78 S. E. 746, Ann. Cas. 1915D, 914. The defendant could not avoid the effect of its agent's conduct inducing the execution of the contract by a provision contained therein prohibiting its agents from altering its terms, that provision applying after, but not before, the policy became effective. *Medley* v. *German, etc., Co.,* 55 W. Va. 342, 47 S. E. 101, 2 Ann. Cas. 99; *Kimball Ice Co.* v. *Springfield, etc., Co.,* 100 W. Va. 728, 132 S. E. 714. See also, *Hamlet* v. *American, etc., Co.,* 107 W. Va. 687, 150 S. E. 7.

It becomes unnecessary to pass upon what we have treated as the sixth assignment.

For the foregoing reasons we affirm the order of the trial court setting aside the verdict and awarding a new trial.

*Affirmed.*